J-S30002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.K.B., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.N., MOTHER | : : : : : : : | |
| | : | No. 576 MDA 2024 |

Appeal from the Decree Entered March 27, 2024
In the Court of Common Pleas of Cumberland County
Orphans' Court at No(s): 060-ADOPT-2023

BEFORE:   PANELLA, P.J.E., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:              **FILED: OCTOBER 16, 2024**

B.N. ("Mother") appeals from the decree entered in the Cumberland County Orphans' Court terminating her parental rights to her biological child (d.o.b. December 2022) ("Child") pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (a)(5), (a)(8), and (b). Counsel has filed an application to withdraw pursuant to **Anders v. California**, 386 US 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).[1] After independent review, we grant counsel's application and affirm the court's order.

In December 2022, Cumberland County Children and Youth Services ("CYS") received a referral from the hospital where Mother gave birth to Child.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending **Anders** to appeals from decrees of involuntary termination of parental rights).

The hospital had concerns about Mother's mental health and reported she stated she was not prepared to care for Child and wanted her aunt to be Child's caregiver. The hospital took protective custody of Child because Mother and her aunt were unable to feed Child or respond to her needs. On December 19, 2022, the court ordered that CYS receive emergency protective custody of Child, who immediately was placed in a foster home.

Mother appeared at the shelter care hearing also held on December 19, 2022. She stated she wanted to be a resource for Child but that she did not have housing or a housing plan. Mother's aunt was excluded as a possible resource because she lacked sufficient knowledge to care for Child, including how to effectively feed her. The court ordered that Child remain in the legal and physical custody of CYS for continued foster home placement and that all contact between Child and her parents[2] be supervised pending an adjudication hearing.

CYS filed a dependency petition on December 20, 2022, alleging that Child was without proper parental care, control and supervision, which placed her health, safety and welfare at risk since Mother had untreated mental health concerns and had informed the hospital staff and CYS at the time of Child's birth that she was not prepared to care for Child. The petition represented that, although Mother presented as a willing resource at the time

---

[2] Mother initially told CYS that M.B. was Child's father. He failed to appear at the hearings. Approximately 2 months' later, Mother identified D.C., who has never had any contact with Child. **See** N.T., 3/26/24, at 8. The court terminated D.C.'s parental rights. He has not appealed.

of the shelter care hearing, she did not have adequate housing or housing plan to care for Child.

At the December 29, 2022, dependency hearing, Mother agreed to parenting education and regular supervised visitation with Child. Mother acknowledged her continued need for housing and mental health intervention. Child was declared dependent and ordered to remain with her foster parents. CYS was authorized to modify Child's placement to her maternal aunt, C.W., and her aunt's significant other, D.K., upon their approval as emergency caretakers. All parties agreed to the placement upon obtaining the approval. On January 3, 2023, an emergency motion to modify placement was filed and Child was placed with C.W. and D.K., effective immediately.

On January 26, 2023, a permanency plan was developed for Mother and modified on May 1, 2023 and September 19, 2023. Mother was ordered to maintain contact with Child while in placement, maintain housing and employment, cooperate with CYS, and ensure that Child's basic needs were being met. Over the life of the case, Mother's compliance with the permanency plan and her attempts to eliminate the circumstances that led to Child's placement were non-existent to minimal, at best.

In March 2024, CYS filed a petition to involuntarily terminate Mother's parental rights to Child. The court held a hearing on March 26, 2024. Ashley Vilkas, CYS placement caseworker; and Child's aunt, C.W., appeared on behalf of CYS. Because Mother had now moved to Georgia, her counsel provided her

with a Zoom link for the termination hearing. Mother failed to appear either in person or via the link.

Vilkas testified that in the first few months of Child's birth, Mother had regular supervised contact with Child at ABC. However, Mother relocated to York County in April 2023, and had failed to attend any supervised visits at ABC since then. *See* N.T., 3/26/24, at 8. Mother has also failed to avail herself of any parenting services or any other CYS services since that time. Since April 2023, Mother has had virtual visits with Child and C.W., some in-person visits with C.W. in October 2023, and C.W. brought Child to York County once. Although they planned to have a visit around Child's December birthday, it never occurred because of C.W.'s work schedule. *See id.* at 9. C.W. was concerned about Mother's mental health and not comfortable bringing Child to visits.

Vilkas said Mother has made minimal progress with her parenting goal. *See id.* at 12. Since April 2023, Mother has not parented Child or provided any type of care for her, failing to provide food, diapers or any other of Child's essentials. Mother does not attend Child's medical appointments. *See id.* at 9. Mother is non-compliant with her permanency goal of maintaining housing and employment. She did not have a home in York, staying in a shelter and with friends. *See id.* at 9-10. Mother has not completed parenting services, although she started them before moving to York in April 2023. *See id.* at 11.

Vilkas rated Mother's progress with parenting goals as minimal. **See id.** at 12-13. Mother's visits and contact with Child's foster parents and CYS have been inconsistent. **See id.** at 13.

Mother did obtain a mental health evaluation, at which she was diagnosed with bipolar disorder, schizophrenia, and ODD. **See id.** at 26. Counseling was recommended and Mother was put on medication. Again, Mother was compliant until she moved to York County. **See id.** at 13. The last time Vilkas spoke with Mother, Mother was not receiving mental health treatment. Mother has been uncooperative with CYS and its providers. Although she twice requested parenting services to be opened, Mother failed to follow through once CYS provided the referrals.

Vilkas reported that Child is "doing great" and is very loved in C.W.'s home. **Id.** at 16. She attends daycare, is up-to-date with all immunizations, and is developmentally on track. C.W. is an adoptive resource. Vilkas testified termination of Mother's parental rights would be in Child's best interest because she is very bonded with C.W. and D.K., the only caregivers Child has ever known. The last visit Child had with Mother, Child did not recognize Mother or allow her to show any affection or provide any care to her. **See id.** at 17. Vilkas testified Mother is not in a position to resume custody of Child, the conditions that caused Child to go into care continue to exist, and that, even if given more time, Mother would not be able to remedy the situation. She opined that since Mother does not engage in any services, it is clear that Mother had no interest in being in Child's life.

C.W. testified Child is doing very well, meeting all her milestones, talking more, and running around. C.W. stated that Mother initially had regular contact with Child, but that had abated. C.W. would reach out to Mother to initiate visits between Mother and Child, but she stopped when she was notified that Mother should be doing the initiating. ***See id.*** at 28-29.

The one in person visit in October 2023 did not go well, because Child did not seem to recognize Mother. As soon as Child saw Mother, she started screaming. When they decided to meet in a different location, Child would not go to Mother. Neither Child nor Mother engaged with each other. ***See id.*** at 31. She said when she was unable to get off work to bring Child to York in December, Mother left her "nasty messages" which has been Mother's consistent behavior through the life of the case.

At the conclusion of the hearing, the orphans' court granted CYS's petition and involuntarily terminated Mother's parental rights pursuant to 23 Pa.C.S. 2511(a)(2), (a)(5), (a)(8), and (b) and changed her goal to adoption. Mother timely appealed.[3]

_____

[3] CYS filed correspondence notifying this Court that it would not be filing an Appellee's brief and that they concur with counsel's ***Anders*** brief that this appeal is wholly frivolous. ***See*** CYS Correspondence, 6/8/24, at 1. On August 5, 2024, Child's guardian *ad litem*, Jennifer Bush Archer, Esquire, filed correspondence with this Court stating, "Child's best interests are served by the termination of parental rights and [Child] remaining with her lifetime caregiver." Archer Correspondence, 8/5/24, at 1. We note with disapproval that Child's legal counsel, Cindy Martin, Esquire, neither filed a brief in this matter nor notified the Court that she would not be doing so. However, at the termination hearing, Attorney Martin stated that she was unable to ascertain Child's understanding of the proceedings because of her young age and that she would defer to the GAL's recommendation. ***See*** N.T., 3/26/24, at 38-39.

Before we consider the merits of Mother's issues, we consider counsel's application to withdraw in which he argues that Mother's appeal is wholly frivolous. *See In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020) ("When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.") (citation omitted).

To withdraw, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

*Commonwealth v. Redmond*, 273 A.3d 1247, 1252 (Pa. Super. 2022) (citation omitted). Counsel must also "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." *In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citing *Commonwealth v. Millisock*, 873 A.2d 748, 752 (Pa. Super. 2005)). Additionally, our Supreme Court has set forth the following requirements for *Anders* briefs:

[W]e hold that in the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. *Anders* and *Santiago* require substantial, not perfect performance. *See Redmond*, 273 A.3d at 1252 .

Instantly, counsel filed a petition to withdraw certifying his conscientious review of the record and determination that Mother's appeals are frivolous, as well as a compliant *Millisock* letter informing Mother of her right to retain private counsel or proceed *pro se* and raise any additional points that she deems worthy of this Court's attention. He further served Mother with a copy of the *Anders* brief. Mother has not responded. Counsel filed the *Anders* brief in this Court setting forth the factual and procedural history, and the issues that he believed might arguably support Mother's appeal with citations to support and to the record, his conclusion that the appeal was frivolous, and his reasons therefore. Thus, counsel has satisfied the procedural requirements of *Anders.*

Next, we proceed to conduct our independent review of whether Mother's appeal is frivolous.

Our standard of review is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.,* 923 A.2d 505, 511 (Pa.Super.2007) (citations omitted).

- 8 -

Further, we have stated:

Where the hearing court's findings are supported by competent evidence of record, we must affirm the hearing court even though the record could support an opposite result.

We are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard for competent and credible evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. Though we are not bound by the trial court's inferences and deductions, we may reject its conclusions only if they involve errors of law or are clearly unreasonable in light of the trial court's sustainable findings.

*In re M.G.,* 855 A.2d 68, 73–74 (Pa.Super.2004) (citations omitted).

In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.,* 843 A.2d 380, 384 (Pa.Super.2004) (*en banc*). Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the

- 9 -

incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa.Super.2004) (citation omitted). Further,

[a] parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa.Super.2008) (citation omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.,* 620 A.2d 481, 484-85 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S.,* 958 A.2d 529, 533 (Pa.Super.2008).

Mother challenges the sufficiency of the evidence presented by CYS. Our independent review, however, confirms that CYS presented sufficient evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A.§ 2511(a)(2).

The evidence presented by CYS clearly establishes that Mother did not complete the objectives established for her. Although Mother initially participated in supervised visitation with Child, her contact with Child has been minimal since she moved from Cumberland County to York County in April 2023. Mother has not cooperated with CYS or its providers since her York County relocation. Since Child's birth, Mother has not cared for Child, provided Child with essentials, or seen to her daily needs. Similarly, Mother moved to Georgia before the termination of parental rights hearing. Despite being on notice of the hearing, Mother did not even appear either in-person or via Zoom. Although Mother obtained a mental health evaluation, since moving to York County, she has failed to comply with the recommendation that she attend counseling and take medication. The evidence also demonstrates that

- 11 -

Mother failed to attend any of Child's medical appointments, and failed to maintain stable housing and employment. Vilkas opined that Mother is not in a position to resume custody of Child and the conditions that caused Child to go into care still exist because Mother does not engage in any services to enable her to remedy the situation. Based on the foregoing, the court properly found the evidence was sufficient to support its termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2).

There is also competent evidence in the record to support the trial court's finding that the termination of Mother's rights will serve Child's developmental, physical and emotional needs pursuant to subsection (b). Child is thriving in the pre-adoptive home C.W. where she has lived since she was approximately two-weeks old. She attends daycare, is up-to-date with immunizations, and is developmentally on track. At the in-person visit in October 2023, Child did not recognize Mother, and would not go to her. Vilkas testified termination of Mother's parental rights would be in Child's best interest because she is very bonded with C.W. and her paramour, the only caregivers she has ever known.

Based on the foregoing, we conclude the trial court's decision to terminate Mother's parental rights pursuant Sections 2511(a)(2) and (b) are supported by clear and convincing evidence in the record, and that there was no abuse of the trial court's discretion.

After examining the issues contained in the **Anders** brief and after conducting our own independent review of the record, we agree with counsel's

assessment that Mother's appeal is wholly frivolous. We therefore grant the application to withdraw as counsel.

Decree affirmed. Motion to withdraw as counsel granted.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/16/2024